UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JEFFREY A. DeFRANCO and J.D.
MATERIAL TRUCKING, INC.,

                    Plaintiff,                  **MEMORANDUM & ORDER**

     -against-

                                        Civil Action No. 16-2014

DEPARTMENT OF ENVIRONMENTAL
CONSERVATION OF THE STATE OF
NEW YORK, THE BUILDING DEPART-
MENT OF THE TOWN OF BROOKHAVEN,
AND DEPARTMENT OF CODE
ENFORCEMENT OF THE TOWN OF
BROOKHAVEN, and THE TOWN OF
BROOKHAVEN,

                    Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**For Plaintiffs:**
    **Fredrick P. Stern, PC**
    2163 Sunrise Highway
    Islip, New York 11751
    By:    Fredrick P. Stern, Esq.

**For Defendant Dept.  of Envtl. Conserv. of State of New York**:
    **Eric T. Schneiderman**
    Attorney General of the State of New York
    120 Broadway
    New York, New York 10271
    By:    Mihir A. Desai, Assist. Atty. Gen.

**For Defendants Bldg. Dept. of Town of Brookhaven, Dept. of Code Enforcement of Town of Brookhaven, and Town of Brookhaven:**
    **Rosenberg Calica & Birney LLP**
    100 Garden City Plaza, Suite 408
    Garden City, New York 11530
    By:    Robert M. Calica, Esq.
            Judith Serfaty, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Jeffrey A. DeFranco ("DeFranco") and J.D. Material Trucking, Inc. ("JDM") (collectively "Plaintiffs") commenced this action pursuant to 42 U.S.C. § 1983 against defendants Department of Environmental Conservation of the State of New York ("NYDEC"), the Building Department of the Town of Brookhaven ("Building Dept."), Department of Code Enforcement of the Town of Brookhaven ("Code Dept."), and the Town of Brookhaven ("Brookhaven") (collectively "Town Defendants") asserting violations of their equal protection, due process, and other rights. Presently before the Court is a motion to dismiss by the NYDEC and a motion for judgment on the pleadings by the Town Defendants. For the reasons set forth below, both motions are granted.

**BACKGROUND**

The following allegations are taken from the Complaint ("Comp.") and presumed true for purposes of these motions.

DeFranco and non-party David Hernandez ("Hernandez") are principals of JDM. For approximately two years JDM has been in the business of "taking sand, topsoil, dirt and material from job sites in and around New York City and transferring them to a facility where it then sells same to third parties who need clean fill." Comp. ¶¶ 8-9.

In August 2015, DeFranco and Hernandez were issued tickets by the NYDEC for not having a Solid Waste Permit for JDM's operations at 83 Middle Island Road, Middle Island, New York (the "Middle Island Site"). In September 2015, JDM settled these tickets "by consenting to the entry of a Consent Order without Prejudice to the parties with the condition that

[JDM] would not operate any solid waste material site without getting the necessary permits from the DEC" and paying a fine of $10,000.00. That same month, JDM terminated its operation at the Middle Island Site. Comp. ¶¶ 11-12.

Thereafter, DeFranco received notice from the NYDEC that two trucks, with a logo containing the letters CFS, were discovered attempting to off-load material at the Middle Island Site; appearance tickets were issued to the drivers of the two trucks. A representative of the NYDEC questioned DeFranco regarding the alleged dumping; DeFranco informed the representative that the Middle Island Site was not owned by him and he had no knowledge regarding the incident. Despite this disavowal, "either" DeFranco or JDM was issued an appearance ticket. "[JDM] has no knowledge regarding the outcome of these appearance tickets." Comp. ¶¶ 13-20.

Having vacated the Middle Island Site, JDM leased a small portion of real property known as Dosiak Farm, which leased portion is located on the south side of the Long Island Expressway ("LIE") in Manorville (the "South Street Site"). Dosiak Farm is approximately 140 acres and is located on both sides of the LIE. Prior to leasing, DeFranco and JDM were advised by the owner that the South Street Site was "zoned as part of an agricultural district," which they confirmed "by reviewing tax bills issued by the Town of Brookhaven." Comp. ¶¶ 21-24.

JDM "deposited seven loads of top soil and fill" at the South Street Site. Upon discovering the JDM had commenced operations at the South Street Site, the NYDEC contacted Brookhaven; Brookhaven sent Code Enforcement officers to the South Street Site which officers served appearance tickets on JDM for "alleged violation of Section 45-10F of the Brookhaven Town Code (the "Code") for an offense that is illegible and Section 85-204A of the Code for the

offense 'Permitted Uses A-2 Residence District'. Neither of the appearance tickets contain any factual allegations[.]" The tickets allege that the South Street Site was zoned as an A-2 Residence District. Comp. A-2 Residence Districts in Brookhaven cannot be used for any commercial purpose. Comp. ¶¶25-29.

On or about January 15, 2015, JDM applied to NYDEC "for registration as a processing facility receiving recognizable uncontaminated concrete, asphalt, pavement, brick, soil or rock pursuant to Chapter 6 of the New York Code of Rules and Regulations § 360-16.1(d)(1)(ii)" to operate the South Street Site. "The [a]pplication specifically provided that it had to be submitted 30 days prior to undertaking any activity proposed for said registration." Comp. ¶¶ 30-31.

On January 19, 2016, Brookhaven's Attorney's Office issued a Stop Work Order directing JDM " 'to stop work on the building, structure or property situated' at the South Street Site." At the same time, Long Island Compost was operating a compost facility on the same property for which operation the NYDEC did not require any permit. Comp. ¶¶ 32-33.

"After the 30 day period set forth in the Application had expired, and having received no notification" from the NYDEC that it was denied, JDM "recommenced to bring fill to the South Street Site for grading and stock piling." On February 9, 2016, DeFranco was contacted by NYDEC Enforcement Office Timothy Fay ("Officer Fay") who advised DeFranco that the NYDEC "intended to arrest and charge him with disposing of solid waste into the environment without a permit" and that if DeFranco "did not voluntarily present himself to the New York State Police Barricks he would be arrested and handcuffed." DeFranco so presented himself whereupon "Officer Fay arranged to have him charged, fingerprinted, released for appearance in the First District court, Central Islip on two Misdemeanor Charges (the "Misdemenaor Charges")

which charges are still pending." Comp. ¶¶ 34-37.

"On February 24, 2016 Code Enforcement Officers again appeared at the South Street Site and issued appearance tickets for 'Certificates of Occupancy' in violation of Section 16-4A of the Code, which is a misdemeanor, and 'A Residence 2 District' in violation of Section 85-204 of the Code, which is a violation. Again these tickets were devoid of any factual allegations on the part of Code Enforcement." Comp. ¶ 38.

Thereafter, JDM leased a different section of the Dosiak Farm, which section was located on the north side of the LIE ("the "Wading River Site"). The Wading River Site "is wedged between a manure processing company and a composting company" and "[t]here is no dispute that the Wading River Site is zoned for agricultural purposes." Comp. ¶¶ 39-41.

On March 2, 2016, DeFranco went to the South Street Site with a bulldozer and trucks to remove the materials which the Town said had been improperly deposited and move them to the Wading River Site but was advised by "[NY]DEC Enforcement Office Mark Simmons" ("Officer Simmons") that NYDEC would not permit JDM to move the materials as the NYDEC intended to enforce Brookhaven's Stop Work Order even though Brookhaven had not advised either JDM or DeFranco that they could not move the fill to another location. That same day, NYDEC issued two "Notice of Violation" to DeFranco "for allegedly violating Section 360-l.7(a)(l)(I) at both the South Street Site and the Wading River Road Site." The notices directed DeFranco " to 'appear or contact' Syed Rahman on March 16, 2016 at 3:00 p.m. or 'a formal administrative enforcement proceeding seeking a civil penalty/fine up to the maximum allowed by law' would result." The fill located at the South Street Site had a value of approximately $200,000.00. NYDEC and Brookhaven still have not allowed JDM to move the fill to the

Wading River Site. Comp. ¶¶ 42-47, 67-68.

After numerous unsuccessful attempts to contact Mr. Rahman, DeFranco went to NYDEC offices on March 8, 2016, to speak to him. Instead, Craig Elgut, an attorney for the DEC handed DeFranco a letter dated March 1, 2016, the second page of which was missing, advising JDM that its application was "incomplete due to [JDM] having submitted an 'old version' of the Application form as well as other documents which had not previously been requested including a Record of Compliance and it Supplemental Information Form and an Owner's Statement Form." The letter also advised that JDM was required to submit a scaled Site Usage Plan. While the letter stated that the required forms were attached, they were not and "Plaintiffs have been unable to locate same either on the [NY]DEC website or by visiting its' [sic] offices." "The denial came more than 30 days after the waiting period designated in the Application." While at NYDEC's offices, DeFranco was advised by Officer Simmons that "it would be fruitless to submit another application as no application submitted by [JDM] would be approved" and that if JDM "continued to operate its'[sic] business the [NY]DEC would contact the Department of Transportation who would arrange to have every one of his trucks stopped and [DeFranco] personally and [JDM] would receive a violation for any offense the DEC could possibly conceive of." "In furtherance of the threat issued by Officer Simmons at the March 2, 2016 meeting, on that same date the DEC issued a series Summonses to [JDM] and its' drivers, for allegedly emitting blue smoke and leaking anti-freeze which summonses are also still pending." Comp. ¶¶ 48-58.

DeFranco continued to make additional efforts to contact Mr. Rahman. As they proved unsuccessful, on March 17, 2016 he sent Mr. Rahman a certified letter advising him of these

attempts and requesting that Mr. Rahman contact him to discuss the notices. Mr. Rahman never contacted him. Meanwhile, on March 15, 2016, Officer Simmons issued "two misdemeanor Uniform Traffic Tickets against [DeFranco] personally for an alleged violation of 6 NYCRR §360-1.7(a)(1)(i) and 1.5(a)(2). These sections of the code refer to a transfer station which does not reflect the operations performed by [JDM] at either the South Street Site or the Wading River [] Site. Comp." ¶¶ 60-64.

In the third week of March 2016, a competitor of JDM's, Thomas Datre ("Datre") began to deposit fill on part of the Dosiak Farm located on the south side of the LIE in an effort to level that property for the construction of storage buildings without any permit being issued by the DEC. Datre was required by NYDEC to stop depositing fill for about one week and required to provide certification that the material he was depositing had been inspected and was not contaminated. Once that certification was provided, NYDEC gave Datre permission to continue depositing fill at his location; fill continues to be deposited at the Datre site, which fill is acquired from the same company JDM secures its fill from. As part of its regular operating procedures, JDM has the fill its acquires inspected by a laboratory prior to it being loaded onto JDM's trucks and after it is deposited at JDM's facility. Comp. ¶¶ 73, 75-81.

At an initial court appearance on the Misdemeanor Charges, the matter was adjourned to April 6, 2016 as the parties had begun settlement discussions. No agreement was reached and at the second court appearance NYDEC requested an adjournment to perform further investigation. Comp. ¶¶ 59, 65.

# DISCUSSION

By way of format, the Court will set forth the principles applicable to Rule 12(b)(1) and 12(c) motions. It will then address NYDEC's motion, followed by Town Defendants' motion.

## I. Legal Standard: Rule 12(b)(1) Motion

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' " *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. Appx. 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

## II. Legal Standard: Rule 12(c) Motion

The standard for evaluating a motion for judgment on the pleadings, pursuant to Rule 12(c), is the same as the standard for a motion to dismiss under Rule 12(b)(6). *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether

they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

In making its determination, the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998).  However, this has been interpreted to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)  Application of these precepts to the present case, permits consideration of the tax map and certificate of occupancy submitted by Town Defendants (Exs. D and E to Eaderesto Aff.) and the appearance tickets submitted by Plaintiffs (Ex. D to Pls.' Opp. Mem. to Town Defs. [DE 24]), but not the affidavits and pictures submitted by Plaintiffs (Ex. A, B, C, E to Pls.' Opp. Town Mem.).[1]

## IV. NYDEC's Motion to Dismiss Pursuant to Rule 12(b)(1)

### A. The Parties' Contentions

NYDEC's motion is premised on the argument that it is an arm of New York State and therefore barred by the Eleventh Amendment. Plaintiffs' response is that its substantive due process claims are not so barred and that they have stated procedural due process and equal protection claims as well as a claim for injunctive relief; they do not, however, actually address NYDEC's Eleventh Amendment argument.

### B. Eleventh Amendment Immunity

With respect to subject matter jurisdiction, the issue is whether Plaintiffs' claims against

---

[1] With respect to the affidavits submitted in connection with an action in the Supreme court of the State of New York (Ex. B & C to Pls.' Opp. Town Mem.), the Court notes that the complaint is devoid of any reference to said action.

NYDEC are barred by the Eleventh Amendment.

> The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
>
> It has long been settled that the reference to actions against one of the United States encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities. Thus, when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Moreover, in addition to barring suits brought against a state by citizens of another state the Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens. *See, e.g., Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Applying the six-part test enunciated in *McGinty v. New York*, 251 F.3d 84-95-96 (2d Cir. 2001) for determining whether a state entity is entitled to Eleventh Amendment sovereign immunity[2], the Second Circuit has held that the NYDEC is such a state entity. *Salvador v. Adirondack Park Agency of State of New York*, 35 Fed. App'x 7, 10 (2d Cir. 2002); *accord Hensler v. New York State Dept. of Environ. Conserv.*, 2016 WL 4288520 (E.D.N.Y. Aug. 15,

---

[2] The six part test is "(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of state or local government; (5) whether the state has a veto power over the entity's actions and (6) whether the entity's financial obligations are binding upon the state." *McGinty*, 251 F.3d at 95-96.

2016); *Rankel v. Town of Somers*, 999 F. Supp.2d 527, 533 n.4 (S.D.N.Y. 2015); *Javino v. Town of Brookhaven*, 2008 WL 656672 (E.D.N.Y. Mar. 4, 2008); *New Holland Vill. Condo. v. DeStaso Enters.*, 139 F. Supp.2d 499, 501-02 (S.D.N.Y. 2001); *Vaizbud v. United States*, 90 F. Supp.2d 210, 215-16 (E.D.N.Y. 2000). The cases cited by Plaintiffs are not to the contrary; they all involve claims against either individuals or municipal entities.

Moreover, the law is clear that Section 1983, the vehicle by which all of Plaintiffs' constitutional claims are brought, does not abrogate the Eleventh Immunity of the States. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979).

Plaintiffs' claims against the NYDEC are dismissed as barred by the Eleventh Amendment.[3]

## V. Town Defendants' Motion for Judgment on the Pleadings

Town Defendants seek dismissal of all of Plaintiffs' claims. First, they maintain that the Building and Code Enforcement Departments cannot be sued separately from Brookhaven itself. Next, they argue that the complaint fails to allege an unconstitutional policy or custom in accordance with the rule announced in *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). Turning to the Equal Protection claim, defendants argue that the allegations in the complaint are insufficient to state either a selective enforcement, class of one or retaliation claim. The substantive and procedural due process claims are defective, it is argued because (1) a

---

[3] The U.S. Supreme Court has held that neither a state, its agencies, nor its officials acting in their official capacities are "persons" under § 1983. *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)); *accord Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies . . . is a person under § 1983."). That NYDEC is not a person under 1983 provides an alternative ground for dismissal of Plaintiffs' claims against it as only "persons" are liable under that statute.

malicious prosecution claim may not be brought as either a substantive or procedural due process claim; (2) plaintiffs failed to pursue available remedies to lift the stop-work order; (3) the conduct alleged is neither egregious or outrageous; (4) plaintiffs fail to plead deprivation of any property interest; and (5) plaintiffs were accorded all the process they were due.

As discussed below, the claims against the Building and Code Enforcement Departments are dismissed as they cannot be separately sued and the claims against Brookhaven are dismissed because no facts to plausibly support a *Monell* claim have been pleaded. Given the forgoing conclusions, it is unnecessary to address the Town Defendants' remaining contentions.

### A. The Claims Against the Building and Code Departments

The Court dismisses the claims against the Building and Code Departments because as municipal agencies they have no separate identity from the Town of Brookhaven itself and therefore are not proper defendants. *See Calicchio v. Sachem Central Sch. Dist.*, 185 F. Supp.3d 303, 315 (E.D.N.Y. 2016); *New York Youth Club v. Town of Harrison*, 2015 WL 8492758, *7 (S.D.N.Y. Dec. 10, 2015); *Martinez v. County of Suffolk*, 999 F. Supp. 2d 424, 429 (E.D.N.Y. 2014).

### B. Liability of Brookhaven Under *Monell*

In order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity

is responsible under § 1983."); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice") (citations omitted); *Middleton v. City of New York*, 2006 U.S. Dist. Lexis 44320 (E.D.N.Y. 2006) (allegations of a isolated incident of police misconduct will not suffice). A municipality cannot be held liable under Section 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691.

"To show a policy, custom, or practice, a plaintiff need not identify an express rule or regulation." *Patterson*, 375 F.3d at 226. "Rather, the existence of a municipal policy or custom may be plead in any of four ways. A plaintiff may allege "(1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees." *Calicchio v. Sachem Central Sch. Dist.*, 2015 WL 5944269, *10 (E.D.N.Y. Oct. 13, 2015) (citing *Giscombe v. New York City Dept. of Educ.*, 2013 WL 829127, * 7 (S.D.N.Y. Feb. 28, 2013); *accord Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 430 (S.D.N.Y.2012)); *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y.2011)*; Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263, 266 (N.D.N.Y. 2000)).

The Supreme Court has long recognized that "[i]f the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely

represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. . . . Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id*. at 481–83 (citations and footnotes omitted). In other words, "municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483–84 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (" 'policy' generally implies a course of action consciously chosen from among various alternatives.")).

The complaint does not include any allegations to plausibly suggest *Monell* liability. There are no facts which plausibly suggest either the existence of a formal policy or a widespread practice. *See, e.g., Vail v. City of New York,* 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014). ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by bare and conclusory statements.) (internal quotation marks omitted). Indeed, the complaint contains only a detailed account of plaintiffs' own experiences. *Cf. Schnauder v. Gibens*, – Fed. App'x –, 2017 WL 549022 (2d Cir. Feb. 10, 2017) (no de facto policy alleged where "apart from a detailed recounting of his own experiences, [plaintiff's] complaint contains only general conclusory allegations that there was a policy . . . .") (internal quotation marks omitted); *Iacovangelo v.*

*Correctional Med. Care, Inc.,* 624 Fed. App'x 10, 14 (2d Cir. 2015) (widespread practice not pled where other than the plaintiff, the pleading provides only one additional example of a similar incident). The complaint is devoid of any reference to a failure by the Town to properly train or supervise the members of either the Building or Code Department, no less contain allegations suggesting that the lack of training or supervision amounted to deliberate indifference to the rights of those who come in contact with municipal employees. Similarly absent are allegations in the Complaint of actions taken or decisions made by municipal officials with final decision making authority over policy which caused the alleged violation of plaintiff's civil rights. Indeed, Plaintiffs seem to concede as much in their opposition memorandum where they concede that they "are unable to determine what officials at the Town made the decision to deprive them of their constitutional rights . . . ." Pls.' Opp. Mem. to Town Defs. at 17.

The assertion in their Memorandum that "the Town Attorney and senior officials in the Building Department were not only aware of, but were personally involved in, carrying out the dictates of the Town" *id.*, does not cure this defect. Even if a statement in a memorandum of law could cure a defective pleading, which it does not, *see Taormina v. Thrifty Car Rental*, 2016 WL 7392214, *8 (S.D.N.Y. Dec. 21, 2016), this does not plausibly suggest that either the Town Attorney or senior officials in the Building Department (none of whom are mentioned in the complaint) were the final municipal policy makers with regard to the matters alleged. *See Boonmalert v. City of New York,* 2017 WL 1378274, * 7 (S.D.N.Y. Apr. 12, 2017) (citing *Hurdle v. Bd. of Educ. of City of N.Y.*, 13 Fed. App'x 423, 427 (2d Cir. 2004)). In fact, it suggests just the opposite.

As the Complaint does not plausibly assert a Monell claim against Brookhaven, the

claims against it are dismissed.

## VI. Leave to Amend

Whether to grant leave to amend "is within the sound discretion" of the court. *McCarty v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir 2007). As one court has recently noted: "the Second Circuit has consistently stated that district courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading." *In re Coty Inc. Securities Litig.*, 2016 WL 1271065, * 11 (S.D.N.Y. Mar. 29, 2016) (citing *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (affirming district court's denial of leave to amend where plaintiff requested leave to amend "on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted"); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend where plaintiffs already had one opportunity to amend their complaint and they "identified no additional facts or legal theories" to support their request to amend); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275–76 (2d Cir. 2006)).

Here, Plaintiffs request leave to amend their complaint in the concluding paragraph of their memoranda without any elucidation of the proposed amendment. *See* Pls.' Opp. Mem to NYDEC at 30;  Pls.' Opp. Mem. to Town at 35. More importantly, granting leave to amend would be futile in this case. The Eleventh Amendment simply does not permit the Plaintiffs' claim against NYDEC. As to Brookhaven, Plaintiffs concede that "[a]t this stage of the proceeding, where discovery has not commenced . . . the Plaintiffs are unable to determine what

officials at the Town made the decision to deprive them of their constitutional rights." Pls.' Opp. Mem. to Town Defs. at 17.[4] In other words, Plaintiffs are unable to set forth facts to plausibly assert a *Monell* claim against Brookhaven. Leave to amend is therefore denied.

## CONCLUSION

The motion to dismiss by the NYDEC and the motion for judgment on the pleadings by the Town Defendants are granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
April 26, 2017

/s  Denis R. Hurley
Denis R. Hurley
Senior District Judge

---

[4] To the extent Plaintiffs did not have sufficient information concerning the relevant final municipal policymaker, they could have availed themselves of the procedure for obtaining disclosure to aid in bringing an action set forth in N.Y. C.P.L.R. § 3102(c).